IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE CART, | ) | CASE NO. 1:13 CV 292 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| CAPITAL MANAGEMENT SERVICES, | ) | |
| L.P., *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) | |

**Introduction**

Before me[1] in this matter raising claims under both Ohio and federal law concerning

the collection of a consumer debt[2] are motions for summary judgment by defendants[3] Capital

Management Services, LP (CMS)[4] and Cheek Law Offices, LLC (Cheek).[5] *Pro se* plaintiff

Christine Cart has filed objections to each motion, together with a motion to strike materials

---

[1]ECF # 36. The parties have consented to my exercise of jurisdiction.

[2]ECF # 1.

[3]Prior defendants Richard K. Montgomery, Capital One Bank (USA) N.A. and Capital One Services LLC were previously dismissed with prejudice on a motions by the plaintiff. ECF ## 97, 101.

[4]ECF # 108.

[5]ECF # 110.

offered in support of each motion,[6] as well as briefs in opposition to each motion.[7] CMS[8] and Cheek[9] have replied to Cart's opposition to their motions for summary judgment, and Cheek has also filed a reply to Cart's motions to strike.[10] Cart, in turn, has responded to the opposition to her motions to strike[11] and to her opposition of the motion for summary judgment.[12]

For the reasons that follow, the defendants' motions for summary judgment will be granted and all other motions will be denied.

## Facts

The facts relevant to the disposition of the motions for summary judgment are not complex. I will address the underlying facts pertaining to the CMS motion first, and then those concerning Cheek. I will then set out the claims asserted against each by Cart.

---

[6]ECF # 115 (objection and motion to strike re: ECF # 108); ECF # 114 (objection and motion to strike re: ECF # 110).

[7]ECF # 114 (opposition to ECF # 108); ECF # 116 (opposition to ECF # 110).

[8]ECF # 118.

[9]ECF # 117.

[10]ECF # 119.

[11]ECF # 120.

[12]ECF # 121.

CMS

In February 2012, Capital One Services, LLC placed a credit card account with a past due balance with CMS for collection.[13] The account, as it was sent to CMS, listed Cart as the owner.[14] As part of the collection effort, CMS initiated a credit inquiry on Cart and sent her a collection letter.[15]

Cart, in turn, and also in February, responded with a letter to CMS disputing the claim and requesting validation,[16] and later requested that any reference to this account be deleted from her credit file at any credit reporting agency.[17]

CMS, for its part, acknowledged receipt of Cart's February letter and promised to forward any information it received from Capital One verifying Cart's ownership of the account.[18] In addition, CMS later told Cart that it would not remove its inquiry from her credit file but had ceased all collection activities.[19]

---

[13]ECF # 108, Attachment 1 (Magnuson affidavit) at ¶ 3 (citing Ex. 1).

[14]*Id.*

[15]*Id.* at ¶¶ 4, 5 (citing Ex. 2); ECF # 66 (2nd amended complaint) at ¶¶ 24, 30.

[16]ECF # 66 at ¶ 25.

[17]*Id.* at ¶¶ 31-37.

[18]ECF # 108, Attachment 1 at ¶ 7.

[19]*Id.*

Cheek

As part of Capital One's efforts to collect on the account bearing Cart's name, it engaged Cheek to pursue collection activities against Cart in June 2012 after CMS ceased its actions.[20] To that end, Cart received a collection letter from Cheek, to which Cart responded by sending Cheek a letter disputing the claim and a request for validation.[21] In July, Cheek sent Cart a letter purporting to provide "verification" of the debt, which letter was attached to 15 pages of documents, including a 2002 application for a credit card signed by Christine L. Cart, as well as copies of monthly credit card statements on that same account from June through October 2006, November and December 2007, and January through July 2008.[22]

Cheek then filed a lawsuit against Cart in state court in August 2012.[23] On January 16, 2014, Cheek, on behalf of Capital One, filed a notice of dismissal of the Ohio claim,[24] causing the case to be dismissed.[25]

---

[20]ECF # 66 (2nd amended complaint) at ¶¶ 40-45.

[21]*Id.* at ¶¶ 41-42.

[22]ECF # 109 (Cart deposition), Ex. B at 200-216.

[23]ECF # 66 at ¶¶ 46-47.

[24]*Id.* at ¶ 67.

[25]*Id.* at ¶ 68.

Cart's claims

Central to Cart's claims here is her assertion that she never had any accounts with Capital One,[26] and that the defendants here knew that or should have known that before they began collections actions against her that ultimately resulted in those actions appearing on her credit history and causing her mental anguish.[27] Alleging that such "highly offensive" collection actions are "widespread and common,"[28]

Specifically, and as regards only the current remaining defendants, Cart maintains that:

Count I - 15 U.S.C. § 1692e(2)

The defendants violated this section by, *inter alia*, "falsely representing the amount and legal status" of any debt.[29]

Count II - 15 U.S.C. § 1692e(10)

The defendants violated this section, inter alia, by using "a false representation or deceptive means to collect or attempt to collect a debt."[30]

---

[26]*Id*. at ¶ 80.

[27]*Id*. at ¶¶ 84-88, 90.

[28]*Id.* at ¶¶ 89, 94.

[29]*Id*. at ¶ 96.

[30]*Id*. at ¶ 98.

Count IV - 15 U.S.C. § 1692f(1)

The defendants violated this section, *inter alia*, by seeking to collect any amount not expressly authorized by the agreement creating the debt or permitted by law.[31] In addition, Cart claims that Cheek violated this section by its collection letter, which allegedly failed to accurately state the amount due.[32]

Count V - 15 U.S.C § 1692g(b)

The defendants violated this section, *inter alia*, "by not ceasing collection efforts until the debt was validated."[33]

Count VI - 15 U.S.C. § 1681

CMS "willfully violated" the Fair Credit Reporting Act (FCRA) by obtaining Cart's consumer credit report without a permissible purpose.[34]

Count VII - 15 U.S.C. § 1681

CMS "negligently violated" the FCRA by obtaining Cart's consumer credit report without a permissible purpose.[35]

---

[31]*Id*. at ¶103.

[32]*Id*.

[33]*Id*. at ¶ 105.

[34]*Id*. at ¶ 107.

[35]*Id*. at ¶ 109.

Count VIII - Ohio Revised Code § 1345

The defendants "automatically" violated the Ohio Consumer Sales Practices Act by reason of the same conduct violating the federal Fair Debt Collections Practices Act.[36]

## Analysis

### A.    Applicable law - summary judgment

The court should grant summary judgment if satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[37] The moving party bears the burden of showing the absence of any such "genuine issue":

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[38]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[39] Determination of whether a factual issue is "genuine" requires consideration of the applicable

---

[36]*Id.* at ¶ 115.

[37]Fed. R. Civ. P. 56(c).

[38]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[39]*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

-7-

evidentiary standards.[40] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[41]

The court should not grant summary judgment if a party who bears the burden of proof at trial does not establish an essential element of his case.[42] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[43] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[44]

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."[45] But if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[46]

---

[40]*Id.* at 252.

[41]*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[42]*McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[43]*Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[44]*Anderson*, 477 U.S. at 249-50 (citation omitted).

[45]*Id.* at 252.

[46]*March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

-8-

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[47] The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[48]  The text of Fed. R. Civ. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[49]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"[50]  Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.

---

[47]*Anderson*, 477 U.S. at 256.

[48]*Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[49]*BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[50]*Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

> Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[51]

But the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[52]

As a general matter, the judge considering a motion for summary judgment need examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[53] The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[54] The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[55]

In sum, proper summary judgment analysis entails:

---

[51]*Id.* at 225-26 (citations omitted).

[52]*Id.* at 226 (citations omitted).

[53]*Anderson*, 477 U.S. at 248.

[54]*Id.* at 249.

[55]*Id.*

the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[56]

## B.  Application of law - the defendants' motions for summary judgment should be granted.

### 1.  Preliminary determinations

a.  Applicability of the Fair Debt Collections Practices Act (FDCPA) - 15 U.S.C. §§ 1692, *et seq.*

As noted, Cart asserts four claims purportedly arising under the FDCPA - Counts I, II, IV and V.[57] Both CMS and Cheek initially argue that summary judgment should be granted in their favor on all these claims because Cart cannot show as a threshold matter that the dispute here concerns a "debt" as that term is defined in the relevant statute.[58]

In that regard, the text of the FDCPA  statute defines debt as "any obligation or *alleged obligation* of a consumer to pay money" arising out of transaction primarily for

---

[56]*Id.* at 250.

[57]Count III also was pled pertaining to this provision, but that count dealt with actions of former defendant Richard Montgomery, who has been dismissed from the case.

[58]ECF # 108 at 7; ECF # 110 at 8-9.

personal, family or household purposes.[59] Therefore, as recently noted by the federal district

court in *Evenson v. Palisades Collection, LLC:*[60]

> **A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a "debt," as that term is defined by § 1692a. The FDCPA does not apply to business debts. It is the plaintiff's burden to show that the obligation at issue was a consumer debt, that is, one that was incurred "primarily for personal, family, or household purposes."[61]**

---

[59] 15 U.S.C. § 1692(a)5 (emphasis added).

[60] *Evenson v. Palisades Collection, LLC, et al.,* 2015 WL 3466936 (S.D. Ohio June 1, 2015).

[61] *Id.* at ** 2-3 (internal quotations and citations omitted).

Here, Cart argues that although she doesn't know how or why the account was created,[62] or used[63] the very collection action itself establishes the existence of an "alleged" consumer debt, which is enough to bring the matter within the scope of the FDCPA.[64]

Despite the apparent simplicity of a threshold inquiry to show the personal nature of the underlying debt in question, an extensive review of current case law establishes that applying this inquiry in cases such as ones concerning identity theft is far from simple or straightforward. Courts recognize the inherent difficulties presented to a FDCPA plaintiff, who is charged with making a threshold showing about the underlying nature of a debt

---

[62]Evenson asserted she was the victim of identity theft (*id*. at *3) whereas Cart merely refused to say at her deposition that she knew anything about the account's creation. *See*, ECF # 109 (Cart deposition) at 13-14 ("Q. Is that [debt] yours? A. Well, that's what I've been trying to figure out for three years."); 14-15 ("I've never seen that [the credit application);" "Not that I recall" [response to question regarding identification of the credit application; "It doesn't appear to be" [response to question "Is that your handwriting [on the application]; "Q. Whose handwriting is it? A. I can't answer that question. Q. Why? A. That's a derogatory question, why. Q. Why can you not answer it? A. I've never seen that before."); 20 (Q. Did you have an account, a credit card account, with Capital One Bank ending in 6760? A. Not that I recall. Q. Did you have a credit card account with any bank at any point in your life? A. Not that I recall. Q. Did you open any credit account with Capital One Bank at any point in your life? A. Not that I recall.").

[63]*Id*. at 36. ("Okay, even if it's not your account, do you know why this account ending in 6760 was used? A. I can't answer that. You would have to ask them. Q. Who's them? A. Whoever it is that document came from and you're - that so alleged account came from. That's a question you'd have to aks them.")

[64]ECF # 116 at 9.

-13-

completely unknown to him.  Such a plaintiff may "lack any practical method to determine the nature of the underlying obligation." [65]

Thus, courts have struggled with a variety of approaches ranging from essentially rewriting the statute so as to remove an "absurd" requirement that Congress must be presumed not to have intended,[66] to maintaining the threshold requirement, but finding that "the determination of whether a debt is a consumer debt is a fact driven one, and should be decided on a case-by-case basis looking at all relevant factors."[67]  With this later approach, an FDCPA plaintiff alleging she was the victim of identity theft who faces a summary judgment motion by an alleged debt collector and thereby confronts a situation where "information about the nature of fraudulently incurred charges may be unavailable or ambiguous," would still be required to create a triable issue of fact as to the nature of the charges to survive the motion, and be expected to do so by reference to any other evidence of record regarding the debt.[68]

Unfortunately, as outlined above, there is no easy path between Scylla and Charybdis. But in this case there is a detour available that avoids this treacherous passage.  Specifically,

---

[65]*Davis v. Midland Funding LLC, et al.*, 41 F.Supp.3d 919, 926 (E.D. California 2014).

[66]*Id.*

[67]*Booshada v. Providence Dane LLC*, 462 Fed. App'x 331, 336 (4th Cir. 2012).

[68]*Toroussian v. Asset Acceptance LLC, et al.*, 2013 WL 5524831, at *6 (C.D. California 2013); *see also*, *Scott v. Portfolio Recovery Associates LLC*, __ F.Supp.3d __, 2015 WL 6160003, at * 5 (S.D. Iowa Oct. 16, 2015); *Horton v. Trans Union LLC, et al.,* 2015 WL 1055776, at *6 (E.D. Pennsylvania March 9, 2015).

as will be discussed below, because Cart's FDCPA claims cannot survive the present motion even if Cart were able to bring them under the statute, I will assume without deciding that the debts at issue here are consumer debts contracted for personal, family or household purposes within the meaning of 15 U.S.C. § 1692a(5).

**b.**     **Motion to strike**

As a related matter, Cart has moved to strike exhibits in support of the motions for summary judgment filed by both CMS[69] and Cheek.[70]  In both instances, Cart asserts that documents purporting to be the credit card transactions at issue, which were transmitted to her by Cheek as evidence of the debt, as well as shown to her at her deposition for the same purpose, and are now cited by CMS in its motion for summary judgment, should be stricken because the documents cannot be authenticated and so are hearsay.[71] Cheek, in turn, argues that under the "adoptive business records" exception to the hearsay rule its record custodian may authenticate the statements as records of Cheek that were obtained from the original creditor in the ordinary course of Cheek's business.[72]

Similar to the controversy over the nature of the debt discussed above, there is no clear mandate for accepting the "adoptive business record" approach in this case since neither the United States Supreme Court nor the Sixth Circuit  has definitively done so. That said,

---

[69]ECF # 113.

[70]ECF # 115.

[71]ECF # 113 at 2; ECF # 115 at 2-8.

[72]ECF # 119 at 4.

however, while a federal court in the Southern District of Ohio was recently persuaded to recognize that standard,[73] I find there is no need to adjudicate this question here.

In particular, whatever importance authenticating the credit card transactions as admissible evidence would have in an action seeking to compel Cart, or anyone else, to satisfy such a debt, that action is not before me.[74] Rather, the case here involves claims by Cart that the law was violated in the way a collection was pursued.

In such a posture, it must be understood that "the FDCPA does not impose a duty of investigation on debt collectors,"[75] nor does the FDCPA "provide a federal remedy for unsuccessful collection suits commenced with insufficient documentation."[76] Further, as will be discussed  below, even the statutory debt verification required by 15 U.S.C. § 1692g(b) does not insist at this stage on the production of authenticated records in a form admissible at trial, but is satisfied when the consumer is given "*notice* of how and when the debt was originally incurred or other sufficient *notice* from which the consumer could sufficiently dispute the payment obligation."[77]

---

[73]*Clark v. Main Street Acquisitions Corp*., 2013 WL 2295879, at *5 (S.D. Ohio 2013)(citing *Air Land Freight Forwarders, Inc. v. United States*, 172 F.3d 1338 (Fed. Cir. 1999)).

[74]Indeed, as noted above, that action was dismissed from the state court.

[75]*Hrivnak v. NCO Portfolio Management, et al.,* 994 F.Supp.2d 889, 899 (N.D. Ohio 2014)(citation omitted).

[76]*Id*. (citation omitted),

[77]*Haddad v. Alexander, Zemanski, Danner & Fioritto, PLLC,* 758 F.3d 777, 786 (6th Cir. 2014)(emphasis added).

Thus, although Cart has repeatedly raised the alleged inadmissability of the purported debt records during her deposition and again in opposition the summary judgment motions, that argument is fundamentally irrelevant.  Accordingly, her motions to strike are denied for that reason.

2.      Count I and II - 15 U.S.C. § 1692e(2), and § 1692e(10)

Cart here claims that CMS and Cheek violated these sections by falsely representing the amount of the debt and the legal status of the debt,[78] and by using false representations or deceptive means to collect a debt.[79]

Here, as Cheek points out, the underlying claims for collection against Cart were dismissed in state court without prejudice, resulting in no proof either way as to the presence of any valid debt or, if so, in what amount.[80] Moreover, as both CMS and Cheek also note, Cart has testified in her deposition that she has no knowledge of whether the amount of any debt that either defendant sought to collect from her was accurate or not, because she couldn't say if the account was actually hers and further could not provide any information as to any specific amount allegedly owed.[81]

Thus, without any contrary evidence from Cart in the Rule 56 record, the uncontroverted evidence is that CMS sought to collect from Cart according to the terms of

---

[78]ECF # 66 at ¶ 96.

[79]*Id*. at ¶ 98.

[80]ECF # 110 at 9.

[81]*Id*.; ECF # 108 at 7-8.

an account that its client Capitol One placed with it for collection,[82]  and similarly Cheek

attempted collection from Cart according to the debt records it received from Capitol One.[83]

As such, these collection efforts grounded on records received from the creditor do not give

rise to a violation of the FDCPA, as was discussed above.

Accordingly, both defendants are entitled to summary judgment in their favor as to

Counts I and II.

3.      Count IV - 15 U.S.C.§ 1692f(1).

In this count, Cart contends that CMS and Cheek sought to collect an amount not

authorized by either the credit agreement or the law.[84] Further, Cart maintains that Cheek

violated this provision by giving a "current balance" in the collection letter, which, she

asserts, is not "the amount due."[85]

This count suffers from the same defects as the prior allegations in that Cart has no

evidence in the Rule 56 record as to what amounts were actually due on the account, and thus

any evidence that the amount presented by either defendant were incorrect.  Further, because

Cart specifically testified that she did not know what charges were authorized by the

agreement, or even if the agreement shown to her was the operative agreement in this case,

---

[82]ECF # 108 at 8 (citing record).

[83]ECF # 117 at 2 (citing record).

[84]ECF # 66 at 103.

[85]*Id.*

there is nothing to create a triable issue of material fact on this question.[86]  The uncontested

Rule 56 evidence before me is that both CMS and Cheek proceeded on the basis of debts

incurred under a credit agreement signed by Christine Cart, which agreement was furnished

to them by Capitol One, and which they were each entitled to rely without further inquiry.

For the reasons stated, CMS and Cheek are entitled to summary judgment on this

count.

    4.    Count V - 15 U.S.C. § 1692g(b)

Cart alleges that Cheek did not cease collection efforts until the debt was validated.[87]

Here, Cart seems to assert that although she did receive correspondence from Cheek in

response to her request to "validate" the debt, that correspondence was insufficient and so

Cheek had no basis to continue its collection efforts.

Cheek's verification letter of July 11, 2012, which is attached to Cart's deposition and,

together with its attachments, is supported by an affidavit from attorney Nicholas J. Cheek.[88]

The letter states that it is in response to Cart's request for verification of the debt,[89] and then

attaches 16 pages of photocopies of the signed account application, as well as individual

---

[86]*See*, ECF # 110 at 11-12 (citing record)(a review of Cart's deposition testimony on the subject of how the agreement authorized charges and costs that explain differing balances in the account).

[87]ECF # 66 at ¶ 105.

[88]ECF # 109, Ex. B.

[89]*Id*. at 2.

monthly statements showing the amounts of individual charges on the account, the location, date and type of purchase, charge or fee, as well as any payment or credit.[90]

As was discussed above, Cart's frequently repeated objection has been that these documents are not authenticated such as would make them admissible as evidence.  But Cart has not alleged that compliance with the requirement to verify a debt means that all submitted elements of the verification be in the form of admissible evidence.  In fact, as was also discussed above, the statute does not impose that burden.   Rather, the verification requirement is met when the alleged debtor is provided sufficient "notice" of essential elements of the asserted debt.

Further, if the materials provided by Cheek in its July 2012 correspondence to Cart were adequate under the statute, it then incurred no liability under this provision by further pursuing collection activities after the verification was accomplished.

In this case, the materials provided by Cheek and present in this record comply with the requirements of 15 U.S.C. § 1692g(b). Accordingly, Cheek is entitled to summary judgment as to the claims asserted against in Count V.

---

[90]*Id*. at 3-18.

5.      Counts VI, VII - 15 U.S.C. § 1681

Here, Cart contends that CMS both willfully (Count VI) and negligently (Count VII) violated the Fair Credit Reporting Act (FCRA) by obtaining her credit report without a proper purpose.[91]

The uncontested Rule 56 evidence is that Capital One placed an account in Cart's name with CMS for collection.[92]  Therefore, the law is clear that CMS then had a permissible purpose under the FCRA to request Cart's credit report.[93]

Accordingly, CMS is entitled to summary judgment as to the claims asserted in Counts VI and VII.

6.      State law claims in Count VIII

In this count Cart seeks to impose liability under Ohio's Consumer Sales Practices Act (OCSPA), Ohio Revised Code § 1345, on both CMS and Cheek as "suppliers" who committed unfair or deceptive acts in connection with a consumer transaction.[94]  In that regard, she further contends that conduct violating the FDCPA automatically violates the OCSPA.[95]

---

[91]ECF # 66 at ¶¶ 107, 109.

[92]ECF # 108, Attachment 1 (Magnuson affidavit) at ¶ 3.

[93]*Shelton v. NCO Financial Systems, Inc.*, 2013 WL 2239132, at *3 (N.D. Ohio May 21, 2013).

[94]ECF # 66 at ¶¶ 111-116.

[95]*Id*. at ¶ 115.

But, if there is no violation of the FDCPA by either defendant, there is no basis for finding either defendant liable under the OCSPA.[96] Therefore, because both defendants are entitled to summary judgment in their favor as to all claims asserted against them by Cart under the FDCPA , both defendants are also, and on the same record as applied above, entitled to summary judgment in their favor as to claims asserted against them in Count VIII.

### Conclusion

For the reasons stated, the motions for summary judgment by CMS[97] and Cheek[98] are granted in full, and Cart's motions to strike[99] are denied.

IT IS SO ORDERED.


Dated: November 18, 2015                          s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

---

[96]*Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007); *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 403 (6th Cir. 1998); *Zamos v. Asset Acceptance, LLC,* 423 F.Supp. 2d 777, 788 (N.D. Ohio 2006).

[97]ECF# 108.

[98]ECF# 110.

[99]ECF ##113, 115.

-22-